Li Liu (SBN 362408)
sharon@myiptrustlaw.com
Admitted in California
MY IP & TRUST LAW, PLLC
12603 Southwest Fwy, Suite 210
Stafford, TX 77477
Telephone: (213) 685-2164
Facsimile: None
Attorney for Defendant and
Counterclaim-Plaintiff
Zhejiang Eco New Material Co., Ltd.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

I4F LICENSING N.V.,

Plaintiff,

v.

CHANGZHOU SUBILI NEW MATERIALS CO., LTD., *et al.*,

Defendants.

Case No. 2:26-cv-04985-FLA(BFMx)

**DEFENDANT ZHEJIANG ECO NEW MATERIAL CO., LTD.'S ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS TO PLAINTIFF'S FIRST AMENDED COMPLAINT**

**DEMAND FOR JURY TRIAL**

Hon. Fernando L. Aenlle-Rocha
Courtroom 6B

Complaint Filed: May 8, 2026
FAC Filed: August 10, 2026

Defendant Zhejiang Eco New Material Co., Ltd. ("Eco"), which the First Amended Complaint (Dkt. 30) (the "FAC") refers to as "Zhejiang," answers the FAC of Plaintiff i4F Licensing N.V. ("i4F") and asserts its affirmative defenses and counterclaims as follows.

## PRELIMINARY STATEMENT

Eco is a Chinese manufacturer of stone plastic composite ("SPC") flooring and has been a licensee of i4F since 2018, but never under any of the patents asserted here. Much of the FAC concerns a different company, Defendant Changzhou Subili New Materials Co., Ltd. ("Subili"). *See, e.g.*, FAC ¶¶ 19–25, 43–44 (Dkt. 30 at 5–6, 10).

The FAC's case against Eco rests largely on Subili's marketing. To describe how Eco supposedly makes its flooring, the FAC relies on a Made-in-China.com listing that Subili posted for a Subili-branded product. FAC ¶¶ 29, 31, 33, 52–54, 64–70, 82–93 (Dkt. 30 at 7–17); Ex. D (Dkt. 30-4 at 1–2). Subili is not Eco. The two companies have no ownership relationship and share no officers, employees, or facilities. On May 18, 2026, Eco demanded in writing that Subili stop using Eco's name and information. The only Eco product material attached to the FAC, a single page from Eco's website, shows the layers of an SPC plank and says nothing about the formulations, lamination temperatures, annealing, or coating methods on which i4F's infringement theories depend. Ex. E (Dkt. 30-5 at 1).

Two of the three patents reach their claimed 2016 priority date only through continuation-in-part applications filed between 2019 and 2021, and any claim that depends on matter first added in those applications is entitled to no earlier date. Eco denies infringement, denies that the Asserted Claims are valid, and counterclaims for declaratory judgments of non-infringement and invalidity.

## ANSWER

Eco responds to the numbered paragraphs of the FAC as follows. The

FAC's headings, images, and exhibits are not allegations requiring a response; to the extent a response is required, Eco denies them. Except as expressly admitted below, Eco denies every allegation of the FAC. Where Eco states that it lacks knowledge or information sufficient to form a belief about the truth of an allegation, that statement operates as a denial under Federal Rule of Civil Procedure 8(b)(5). The FAC groups Eco with Subili as the "Chinese Defendants" and with all defendants as "Defendants"; Eco responds only for itself. Eco's use of the FAC's defined terms, including "Accused Products," is for convenience only and is not an admission that any Eco product infringes. Eco answers without waiving, and expressly preserving, its defense of lack of personal jurisdiction.

**PATENTS-IN-SUIT**

1. Eco admits that the FAC purports to state a civil action for infringement of United States Patent Nos. 11,091,918 (the "'918 Patent"), 11,794,396 (the "'396 Patent"), and 12,427,753 (the "'753 Patent") (together, the "Asserted Patents"), and that the face of each patent bears the title quoted in paragraph 1. Eco denies that it has infringed or infringes any valid claim of the Asserted Patents, denies that the Asserted Patents are valid, and denies any remaining allegations of paragraph 1.

**PARTIES**

2. Eco lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 2, and on that basis denies them.

3. Paragraph 3 concerns Subili. Eco lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 3, and on that basis denies them.

4. Eco admits that it is a company organized under the laws of the People's Republic of China and that its registered Chinese name is as stated in paragraph 4. Eco admits that the FAC refers to Eco as "Zhejiang" and to Eco and Subili together as the "Chinese Defendants." Eco denies that it is affiliated with

Subili and denies that any inference may be drawn from the FAC's grouping of Eco with Subili. Eco denies any remaining allegations of paragraph 4.

5. Paragraph 5 concerns Defendant Artisan Floors Corporation ("Artisan"). Eco lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 5, and on that basis denies them.

**JURISDICTION AND VENUE**

6. Eco admits that the FAC purports to state a claim for patent infringement arising under the patent laws of the United States, including 35 U.S.C. § 271. Eco denies that it has committed any act of infringement, denies that i4F is entitled to any relief, and denies any remaining allegations of paragraph 6.

7. Eco admits that this Court has subject-matter jurisdiction over claims of patent infringement under 28 U.S.C. §§ 1331 and 1338(a). Eco denies that 28 U.S.C. § 1367 has any application, because the FAC asserts no claim within the Court's supplemental jurisdiction. Eco denies any remaining allegations of paragraph 7.

8. Eco denies the allegations of paragraph 8 as they relate to Eco, and specifically denies that it has committed any act of infringement in this District or elsewhere. Eco preserves its defense of lack of personal jurisdiction. To the extent paragraph 8 is directed to any other defendant, Eco lacks knowledge or information sufficient to form a belief about the truth of those allegations, and on that basis denies them.

9. Paragraph 9 states legal conclusions to which no response is required. To the extent a response is required, Eco denies the allegations of paragraph 9 as they relate to Eco, and specifically denies that it has committed acts of infringement in the United States or purposefully directed any infringing activity at United States residents. To the extent paragraph 9 is directed to any other defendant, Eco lacks knowledge or information sufficient to form a belief

about the truth of those allegations, and on that basis denies them.

10. Paragraph 10 states legal conclusions to which no response is required. To the extent a response is required, Eco does not contest, for purposes of this action only, that venue as to Eco, a foreign corporation, lies in this District under 28 U.S.C. § 1391(c)(3). Eco denies that it has committed acts of infringement in this District or elsewhere, and denies that it imports, sells, or offers to sell any infringing product in this District. Eco denies any remaining allegations of paragraph 10 as they relate to Eco. To the extent paragraph 10 is directed to any other defendant, Eco lacks knowledge or information sufficient to form a belief about the truth of those allegations, and on that basis denies them.

11. Eco admits that the FAC defines the "Accused Products" as stone plastic composite floor panels or tiles utilizing the Lox locking system marketed and licensed by Vilox AB, which the FAC describes as i4F's competitor. Eco admits that it manufactures SPC floor panels in China, and that Eco has sold certain SPC floor panels to customers on FOB Shanghai terms, under which delivery occurs and risk of loss passes to its customers in China. Eco denies that it imports, sells, or offers to sell in the United States any product that infringes any valid claim of the Asserted Patents, and denies any remaining allegations of paragraph 11 as they relate to Eco. To the extent paragraph 11 is directed to any other defendant, Eco lacks knowledge or information sufficient to form a belief about the truth of those allegations, and on that basis denies them.

**PATENT INFRINGEMENT IN VIOLATION OF 35 U.S.C. § 271**

12. Eco incorporates by reference its responses to the preceding paragraphs of the FAC as if fully set forth herein.

13. Eco admits that i4F markets locking systems for floor panels, including the 3L TripleLock and Click4U locking systems, and licenses them to flooring manufacturers, including Eco. Eco lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of

paragraph 13, and on that basis denies them.

14. Eco lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 14, and on that basis denies them.

15. Eco admits that the records of the United States Patent and Trademark Office identify i4F as the assignee of the Asserted Patents. Eco denies, on information and belief, that i4F held legal title to the ’918 Patent when it commenced this action, *see* Third Defense, and denies any remaining allegations of paragraph 15.

16. Eco admits that it manufactures PVC-based flooring materials, including SPC floor panels. To the extent paragraph 16 concerns Subili, Eco lacks knowledge or information sufficient to form a belief about the truth of those allegations, and on that basis denies them. Eco denies any remaining allegations of paragraph 16.

17. Paragraph 17 concerns Subili. Eco lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 17, and on that basis denies them. Eco states that the website reproduced in paragraph 17 and Exhibit A is not Eco’s website.

18. Eco admits that it does business under the name and mark “ECO” and operates the website located at https://www.ecoflooring.com.cn/. Eco denies any remaining allegations of paragraph 18.

19. Eco admits that the second image reproduced in paragraph 19, taken from Eco’s website (Ex. B (Dkt. 30-2 at 1)), depicts Eco’s logo, and that Subili’s website, Exhibit A, displays Eco’s logo alongside Subili’s “Superior Floor” mark. Ex. A (Dkt. 30-1 at 1, 3). Eco denies any remaining allegations of paragraph 19, including any implication that Eco and Subili are affiliated.

20. Eco admits that its address is No. 38 Zijin Road, Puyuan High-tech Park, Tongxiang City, Zhejiang Province, China, as shown on Eco’s website. Ex. B (Dkt. 30-2 at 1). Eco admits that the Subili website excerpt reproduced in

paragraph 20 lists a "Zhejiang Head office" at the same address, Ex. C (Dkt. 30-3 at 1). Eco denies that it shares an office with Subili, denies that Subili has any office at Eco's premises, and denies that Eco authorized Subili to identify Eco's address as a Subili office. Eco denies any remaining allegations of paragraph 20.

21. Eco lacks knowledge or information sufficient to form a belief about what i4F obtained from Subili or what accompanied it, and on that basis denies the allegations of paragraph 21. Eco denies that it authorized Subili to use Eco's business cards, brochures, product samples, name, or other materials in sales to customers in the United States. Eco denies any remaining allegations of paragraph 21.

22. Eco denies the allegations of paragraph 22. Eco is not a parent, subsidiary, or sister corporation of Subili.

23. Eco denies the allegations of paragraph 23. Eco does not share facilities or employees with Subili.

24. Eco denies the allegations of paragraph 24. Eco and Subili are not under common ownership.

25. Eco denies the allegations of paragraph 25. Eco has never sold SPC flooring to Subili for U.S. markets.

26. Eco admits that SPC flooring generally has a core formed from a mixture of PVC and a mineral filler such as calcium carbonate. Eco denies any remaining allegations of paragraph 26.

27. Eco admits that its SPC floor panels include an SPC core with one or more layers above the core. Eco denies that any Eco product infringes any valid claim of the Asserted Patents and denies any remaining allegations of paragraph 27 as they relate to Eco. To the extent paragraph 27 is directed to any other defendant, Eco lacks knowledge or information sufficient to form a belief about the truth of those allegations, and on that basis denies them.

28. Paragraph 28 concerns Subili. Eco lacks knowledge or information

sufficient to form a belief about the truth of the allegations of paragraph 28, and on that basis denies them. Eco states that the map reproduced in paragraph 28 is taken from Subili's website, Ex. A (Dkt. 30-1 at 2), not from Eco's.

29. Paragraph 29 concerns Subili. Eco lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 29, and on that basis denies them. Eco states that Exhibit D is a Made-in-China.com listing posted by Subili for a Subili-branded product. On its face it identifies the supplier as "Changzhou Subili New Material Co., Ltd.," the model number as "SP 201XL," the trademark as "SUBILI," and the origin as "Changzhou, China." Ex. D (Dkt. 30-4 at 1–2). Exhibit D is not an Eco document.

30. Eco denies the allegations of paragraph 30. Eco does not act as the importer of the products it sells, and Eco denies that any product it sells infringes any valid claim of the Asserted Patents.

31. Eco admits that Exhibit E is a page from Eco's website for an Eco SPC product designated ECOW9001, and that the diagram on that page labels a UV coating, a wear layer, a decoration layer, an SPC rigid core layer, and an IXPE foam backing. Ex. E (Dkt. 30-5 at 1). Eco admits that certain of its SPC products include an SPC core comprising PVC and calcium carbonate, a PVC decorative film, a PVC wear layer, a UV-cured coating, and locking edge profiles. Eco states that the first two images reproduced in paragraph 31 come from Exhibit D, Subili's listing. Eco denies that it imports into, or sells in, the United States any product that infringes any valid claim of the Asserted Patents, and denies any remaining allegations of paragraph 31 as they relate to Eco. To the extent paragraph 31 is directed to any other defendant, Eco lacks knowledge or information sufficient to form a belief about the truth of those allegations, and on that basis denies them.

32. Eco admits that it makes its SPC cores by mixing PVC resin with calcium carbonate. The proportions of PVC and calcium carbonate in that

mixture have varied among Eco's products and over time, and Eco is assembling the formulation records needed to state them as percentages by weight of the mixture. Eco therefore lacks knowledge or information sufficient to form a belief about the truth of the allegations that the mixture contains 15 to 75 wt.% calcium carbonate, or between 20% and 35% PVC and between 63% and 73% calcium carbonate by weight, and on that basis denies them. Eco denies that it adds a plasticizer, including DOTP, to its SPC core mixture, and denies the remaining allegations of paragraph 32 as they relate to Eco. To the extent paragraph 32 is directed to any other defendant, Eco lacks knowledge or information sufficient to form a belief about the truth of those allegations, and on that basis denies them.

33. Eco admits that it forms its SPC cores by extrusion. Eco denies the remaining allegations of paragraph 33 as they relate to Eco. Eco states that the image reproduced in paragraph 33 is taken from Exhibit D, Subili's listing. To the extent paragraph 33 is directed to any other defendant, Eco lacks knowledge or information sufficient to form a belief about the truth of those allegations, and on that basis denies them.

34. Eco denies the allegations of paragraph 34 as they relate to Eco. To the extent paragraph 34 is directed to any other defendant, Eco lacks knowledge or information sufficient to form a belief about the truth of those allegations, and on that basis denies them.

35. Eco admits that certain of its SPC products include a transparent wear layer, a decorative layer beneath the wear layer, and a UV-cured coating. Eco denies any remaining allegations of paragraph 35 as they relate to Eco, including any characterization drawn from Exhibit D. To the extent paragraph 35 is directed to any other defendant, Eco lacks knowledge or information sufficient to form a belief about the truth of those allegations, and on that basis denies them.

36. Eco admits that certain of its SPC products include an IXPE foam backing, as shown in Exhibit E. Eco denies any remaining allegations of

paragraph 36 as they relate to Eco. To the extent paragraph 36 is directed to any other defendant, Eco lacks knowledge or information sufficient to form a belief about the truth of those allegations, and on that basis denies them.

37. Eco admits that it markets certain of its SPC products as waterproof and wear-resistant. Eco denies any remaining allegations of paragraph 37 as they relate to Eco. Exhibit D, cited in paragraph 37, is Subili's listing. To the extent paragraph 37 is directed to any other defendant, Eco lacks knowledge or information sufficient to form a belief about the truth of those allegations, and on that basis denies them.

38. Paragraph 38 purports to characterize the Asserted Patents, and Eco refers to the patents for their contents. Eco denies that the Asserted Patents validly claim SPC floor panels or tiles or processes for producing them, and denies any remaining allegations of paragraph 38.

39. Paragraph 39 is directed to Defendant Artisan, and no response by Eco is required. To the extent a response is required, Eco lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 39, and on that basis denies them. Eco denies that any product infringes any valid claim of the Asserted Patents.

40. Eco admits that it has sold SPC flooring products to Artisan. Those sales were made on FOB Shanghai terms. Eco denies that its sales to Artisan took place in the United States, denies that any product it sold to Artisan infringes any valid claim of the Asserted Patents, and denies any remaining allegations of paragraph 40.

41. Eco admits that none of its license agreements with i4F extends to the Asserted Patents. Eco denies that it requires a license under the Asserted Patents, because Eco does not infringe any valid claim. To the extent paragraph 41 is directed to any other defendant, Eco lacks knowledge or information sufficient to form a belief about the truth of those allegations, and on that basis

denies them.

42. Eco denies the allegations of paragraph 42 as they relate to Eco. To the extent paragraph 42 is directed to any other defendant, Eco lacks knowledge or information sufficient to form a belief about the truth of those allegations, and on that basis denies them.

43. Eco lacks knowledge or information sufficient to form a belief about any letter i4F sent to Subili, and on that basis denies the allegations of paragraph 43.

44. Paragraph 44 concerns Subili. Eco lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 44, and on that basis denies them.

45. Eco admits that it is a licensee of i4F with respect to i4F's 3L TripleLock and Click4U locking systems. Eco admits that neither that license nor any other license Eco holds from i4F extends to the Asserted Patents, but denies that Eco practices any valid claim of those patents. Eco denies any remaining allegations of paragraph 45.

46. Eco admits that it has been aware of the '396 Patent since i4F emailed Eco a letter dated May 23, 2024, which asserted that SPC panels with a Vilox locking system infringed that patent, and that Eco is now aware of the other Asserted Patents, which i4F asserted against it in this action. The May 23, 2024 letter did not mention the '918 Patent, and the '753 Patent had not yet issued. Eco denies that it was aware of the '918 Patent or the '753 Patent before this action, denies that its license relationship with i4F, which has never concerned the Asserted Patents, made Eco aware of any Asserted Patent, and denies that it has been willfully blind to them. Eco denies any remaining allegations of paragraph 46.

47. Eco denies the allegations of paragraph 47 as they relate to Eco. To the extent paragraph 47 is directed to any other defendant, Eco lacks knowledge

or information sufficient to form a belief about the truth of those allegations, and on that basis denies them.

48. Paragraph 48 is directed to Defendant Artisan, and no response by Eco is required. To the extent a response is required, Eco lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 48, and on that basis denies them. Eco denies that any product infringes any valid claim of the Asserted Patents.

**COUNT I: INFRINGEMENT OF U.S. PATENT NO. 11,091,918**

49. Eco incorporates by reference its responses to the preceding paragraphs of the FAC as if fully set forth herein.

50. Eco denies the allegations of paragraph 50 as they relate to Eco, and specifically denies that any Eco product is manufactured by a process recited in any claim of the ’918 Patent. To the extent paragraph 50 is directed to any other defendant, Eco lacks knowledge or information sufficient to form a belief about the truth of those allegations, and on that basis denies them.

51. Eco denies the allegations of paragraph 51 as they relate to Eco. To the extent paragraph 51 is directed to any other defendant, Eco lacks knowledge or information sufficient to form a belief about the truth of those allegations, and on that basis denies them.

52. Eco admits that it manufactures SPC floor panels. Eco denies that any Eco product is manufactured by a process recited in any claim of the ’918 Patent, denies that Exhibit D or Exhibit E shows any such process, and denies any remaining allegations of paragraph 52 as they relate to Eco. To the extent paragraph 52 is directed to any other defendant, Eco lacks knowledge or information sufficient to form a belief about the truth of those allegations, and on that basis denies them.

53. Eco admits that its SPC cores contain PVC and calcium carbonate and are formed by extrusion. The proportions of PVC and calcium carbonate in

Eco's SPC core mixture have varied among Eco's products and over time, and Eco is assembling the formulation records needed to state them as percentages by weight of the mixture. Eco therefore lacks knowledge or information sufficient to form a belief about the truth of the allegation that the mixture contains 15 to 75 wt.% calcium carbonate, and on that basis denies it. Eco denies the remaining allegations of paragraph 53 as they relate to Eco. To the extent paragraph 53 is directed to any other defendant, Eco lacks knowledge or information sufficient to form a belief about the truth of those allegations, and on that basis denies them.

54. Eco admits that, in its manufacturing process, a décor film and a wear layer are laminated to the SPC substrate. Eco denies that it reheats the substrate before the top layer is attached, and denies that its process includes annealing the covering panel. The FAC does not define the "softening point" or the "melting temperature" of PVC, and PVC has no single value for either. Eco therefore lacks knowledge or information sufficient to form a belief about the truth of the allegation that the substrate is heated to a temperature "above the softening point of PVC, but lower than the melting temperature," and on that basis denies it. Eco denies the remaining allegations of paragraph 54 as they relate to Eco. To the extent paragraph 54 is directed to any other defendant, Eco lacks knowledge or information sufficient to form a belief about the truth of those allegations, and on that basis denies them.

55. Eco denies the allegations of paragraph 55 as they relate to Eco. To the extent paragraph 55 is directed to any other defendant, Eco lacks knowledge or information sufficient to form a belief about the truth of those allegations, and on that basis denies them.

56. Eco denies the allegations of paragraph 56 as they relate to Eco. To the extent paragraph 56 is directed to any other defendant, Eco lacks knowledge or information sufficient to form a belief about the truth of those allegations, and on that basis denies them.

57. Eco denies the allegations of paragraph 57 as they relate to Eco. To the extent paragraph 57 is directed to any other defendant, Eco lacks knowledge or information sufficient to form a belief about the truth of those allegations, and on that basis denies them.

58. Eco denies the allegations of paragraph 58 as they relate to Eco. To the extent paragraph 58 is directed to any other defendant, Eco lacks knowledge or information sufficient to form a belief about the truth of those allegations, and on that basis denies them.

59. Paragraph 59 is directed to Defendant Artisan, and no response by Eco is required. To the extent a response is required, Eco lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 59, and on that basis denies them. Eco denies that any product infringes any valid claim of the Asserted Patents.

60. Eco denies the allegations of paragraph 60 as they relate to Eco. To the extent paragraph 60 is directed to any other defendant, Eco lacks knowledge or information sufficient to form a belief about the truth of those allegations, and on that basis denies them.

**COUNT II: INFRINGEMENT OF U.S. PATENT NO. 11,794,396**

61. Eco incorporates by reference its responses to the preceding paragraphs of the FAC as if fully set forth herein.

62. Eco denies that it imports, sells, or offers to sell in the United States any product that infringes any valid claim of the Asserted Patents. Eco denies the remaining allegations of paragraph 62 as they relate to Eco. To the extent paragraph 62 is directed to any other defendant, Eco lacks knowledge or information sufficient to form a belief about the truth of those allegations, and on that basis denies them.

63. Eco denies the allegations of paragraph 63 as they relate to Eco. To the extent paragraph 63 is directed to any other defendant, Eco lacks knowledge

or information sufficient to form a belief about the truth of those allegations, and on that basis denies them.

64. Eco admits that its SPC products include a core containing PVC and calcium carbonate. Eco denies any remaining allegations of paragraph 64 as they relate to Eco. The images reproduced in paragraph 64 come from Exhibit D, Subili's listing. To the extent paragraph 64 is directed to any other defendant, Eco lacks knowledge or information sufficient to form a belief about the truth of those allegations, and on that basis denies them.

65. Eco admits that its SPC cores contain PVC and calcium carbonate. The proportions of PVC and calcium carbonate in Eco's SPC core mixture have varied among Eco's products and over time, and Eco is assembling the formulation records needed to state them as percentages by weight of the mixture. Eco therefore lacks knowledge or information sufficient to form a belief about the truth of the allegation that its SPC cores contain between 20% and 30% PVC and between 63% and 73% calcium carbonate by weight, and on that basis denies it. Eco denies the remaining allegations of paragraph 65 as they relate to Eco. To the extent paragraph 65 is directed to any other defendant, Eco lacks knowledge or information sufficient to form a belief about the truth of those allegations, and on that basis denies them.

66. Eco admits that its SPC cores are formed by extrusion at elevated temperature and pressure. Eco denies any remaining allegations of paragraph 66 as they relate to Eco. To the extent paragraph 66 is directed to any other defendant, Eco lacks knowledge or information sufficient to form a belief about the truth of those allegations, and on that basis denies them.

67. Eco admits that certain of its SPC products include a decorative layer and a wear layer. Eco denies any remaining allegations of paragraph 67 as they relate to Eco. To the extent paragraph 67 is directed to any other defendant, Eco lacks knowledge or information sufficient to form a belief about the truth of

those allegations, and on that basis denies them.

68. Eco admits that, in certain of its SPC products, the upper surface of the PVC wear layer is embossed and is covered by a transparent UV-cured coating. Eco denies any remaining allegations of paragraph 68 as they relate to Eco. To the extent paragraph 68 is directed to any other defendant, Eco lacks knowledge or information sufficient to form a belief about the truth of those allegations, and on that basis denies them.

69. Eco admits that it laminates a décor film and a wear layer onto its SPC cores under heat and pressure. Whether that process is "hot-melt overlaying" within the meaning of the Asserted Claims is a question of claim construction to which no response is required; to the extent a response is required, Eco denies it. Eco denies the remaining allegations of paragraph 69 as they relate to Eco. To the extent paragraph 69 is directed to any other defendant, Eco lacks knowledge or information sufficient to form a belief about the truth of those allegations, and on that basis denies them.

70. Eco admits that certain of its SPC products include a UV-cured coating. Eco denies any remaining allegations of paragraph 70 as they relate to Eco. To the extent paragraph 70 is directed to any other defendant, Eco lacks knowledge or information sufficient to form a belief about the truth of those allegations, and on that basis denies them.

71. Eco admits that its SPC products do not contain compressed cellulose material. Eco denies any remaining allegations of paragraph 71 as they relate to Eco. To the extent paragraph 71 is directed to any other defendant, Eco lacks knowledge or information sufficient to form a belief about the truth of those allegations, and on that basis denies them.

72. Eco admits that certain of its SPC products, including their SPC cores, are waterproof, and that certain of its SPC products include a printed PVC decorative film, a transparent PVC wear layer, and a transparent UV-cured

coating. Eco denies any remaining allegations of paragraph 72 as they relate to Eco. To the extent paragraph 72 is directed to any other defendant, Eco lacks knowledge or information sufficient to form a belief about the truth of those allegations, and on that basis denies them.

73. Eco denies the allegations of paragraph 73 as they relate to Eco. To the extent paragraph 73 is directed to any other defendant, Eco lacks knowledge or information sufficient to form a belief about the truth of those allegations, and on that basis denies them.

74. Eco denies the allegations of paragraph 74 as they relate to Eco. To the extent paragraph 74 is directed to any other defendant, Eco lacks knowledge or information sufficient to form a belief about the truth of those allegations, and on that basis denies them.

75. Eco denies the allegations of paragraph 75 as they relate to Eco. To the extent paragraph 75 is directed to any other defendant, Eco lacks knowledge or information sufficient to form a belief about the truth of those allegations, and on that basis denies them.

76. Eco denies the allegations of paragraph 76 as they relate to Eco. To the extent paragraph 76 is directed to any other defendant, Eco lacks knowledge or information sufficient to form a belief about the truth of those allegations, and on that basis denies them.

77. Paragraph 77 is directed to Defendant Artisan, and no response by Eco is required. To the extent a response is required, Eco lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 77, and on that basis denies them. Eco denies that any product infringes any valid claim of the Asserted Patents.

78. Eco denies the allegations of paragraph 78 as they relate to Eco. To the extent paragraph 78 is directed to any other defendant, Eco lacks knowledge or information sufficient to form a belief about the truth of those allegations, and

on that basis denies them.

**COUNT III: INFRINGEMENT OF U.S. PATENT NO. 12,427,753**

79. Eco incorporates by reference its responses to the preceding paragraphs of the FAC as if fully set forth herein.

80. Eco denies that it imports, sells, or offers to sell in the United States any product that infringes any valid claim of the Asserted Patents. Eco denies the remaining allegations of paragraph 80 as they relate to Eco. To the extent paragraph 80 is directed to any other defendant, Eco lacks knowledge or information sufficient to form a belief about the truth of those allegations, and on that basis denies them.

81. Eco denies the allegations of paragraph 81 as they relate to Eco. To the extent paragraph 81 is directed to any other defendant, Eco lacks knowledge or information sufficient to form a belief about the truth of those allegations, and on that basis denies them.

82. Eco admits that its SPC cores contain PVC resin and calcium carbonate. Eco denies any remaining allegations of paragraph 82 as they relate to Eco. To the extent paragraph 82 is directed to any other defendant, Eco lacks knowledge or information sufficient to form a belief about the truth of those allegations, and on that basis denies them.

83. Eco admits that its SPC cores contain PVC resin and calcium carbonate. The proportions of PVC and calcium carbonate in Eco's SPC core mixture have varied among Eco's products and over time, and Eco is assembling the formulation records needed to state them as percentages by weight of the mixture. Eco therefore lacks knowledge or information sufficient to form a belief about the truth of the allegation that its SPC cores contain between 18.13% and 64.71% PVC and between 32.35% and 72.53% calcium carbonate by weight, and on that basis denies it. Eco denies the remaining allegations of paragraph 83 as they relate to Eco. To the extent paragraph 83 is directed to any other defendant,

Eco lacks knowledge or information sufficient to form a belief about the truth of those allegations, and on that basis denies them.

84. Eco admits that certain of its SPC products include a decorative layer and a wear layer. Eco denies any remaining allegations of paragraph 84 as they relate to Eco. To the extent paragraph 84 is directed to any other defendant, Eco lacks knowledge or information sufficient to form a belief about the truth of those allegations, and on that basis denies them.

85. Eco admits that the décor film and wear layer of its SPC products are laminated onto the SPC core under heat and pressure. Whether that process is "hot-melt overlaying" within the meaning of the Asserted Claims is a question of claim construction to which no response is required; to the extent a response is required, Eco denies it. Eco denies the remaining allegations of paragraph 85 as they relate to Eco. To the extent paragraph 85 is directed to any other defendant, Eco lacks knowledge or information sufficient to form a belief about the truth of those allegations, and on that basis denies them.

86. Eco admits that it laminates the décor film and wear layer onto its SPC cores without adhesive, under heat and pressure. Whether that process is "hot-melt overlaying" within the meaning of the Asserted Claims is a question of claim construction to which no response is required; to the extent a response is required, Eco denies it. Eco denies the remaining allegations of paragraph 86 as they relate to Eco. To the extent paragraph 86 is directed to any other defendant, Eco lacks knowledge or information sufficient to form a belief about the truth of those allegations, and on that basis denies them.

87. Eco admits that certain of its SPC products have a decorative layer bearing a printed pattern, and a wear layer with an embossed surface. Eco denies the remaining allegations of paragraph 87 as they relate to Eco, including that any embossing is "at least partially complementary" to the printed pattern. To the extent paragraph 87 is directed to any other defendant, Eco lacks knowledge or

information sufficient to form a belief about the truth of those allegations, and on that basis denies them.

88. Eco admits that certain of its SPC products include a UV-cured coating. Eco denies any remaining allegations of paragraph 88 as they relate to Eco. To the extent paragraph 88 is directed to any other defendant, Eco lacks knowledge or information sufficient to form a belief about the truth of those allegations, and on that basis denies them.

89. Eco admits that certain of its SPC products include an IXPE foam backing. Eco denies any remaining allegations of paragraph 89 as they relate to Eco. To the extent paragraph 89 is directed to any other defendant, Eco lacks knowledge or information sufficient to form a belief about the truth of those allegations, and on that basis denies them.

90. Eco admits that certain of its SPC products, including their SPC cores and face layers, are waterproof, and that certain of its SPC products include a printed PVC decorative film, a transparent wear-resistant PVC layer, and a transparent UV-cured coating. Eco denies any remaining allegations of paragraph 90 as they relate to Eco. To the extent paragraph 90 is directed to any other defendant, Eco lacks knowledge or information sufficient to form a belief about the truth of those allegations, and on that basis denies them.

91. Eco admits that its SPC products do not contain compressed cellulose. Eco denies any remaining allegations of paragraph 91 as they relate to Eco. To the extent paragraph 91 is directed to any other defendant, Eco lacks knowledge or information sufficient to form a belief about the truth of those allegations, and on that basis denies them.

92. Eco denies the allegations of paragraph 92 as they relate to Eco. To the extent paragraph 92 is directed to any other defendant, Eco lacks knowledge or information sufficient to form a belief about the truth of those allegations, and on that basis denies them.

93. Eco admits that its SPC floor panels have edge profiles that lock with adjacent panels. Eco denies any remaining allegations of paragraph 93 as they relate to Eco. To the extent paragraph 93 is directed to any other defendant, Eco lacks knowledge or information sufficient to form a belief about the truth of those allegations, and on that basis denies them.

94. Eco denies the allegations of paragraph 94 as they relate to Eco. To the extent paragraph 94 is directed to any other defendant, Eco lacks knowledge or information sufficient to form a belief about the truth of those allegations, and on that basis denies them.

95. Eco denies the allegations of paragraph 95 as they relate to Eco. To the extent paragraph 95 is directed to any other defendant, Eco lacks knowledge or information sufficient to form a belief about the truth of those allegations, and on that basis denies them. Exhibit A, cited in paragraph 95, is Subili's website.

96. Eco denies the allegations of paragraph 96 as they relate to Eco. To the extent paragraph 96 is directed to any other defendant, Eco lacks knowledge or information sufficient to form a belief about the truth of those allegations, and on that basis denies them.

97. Eco denies the allegations of paragraph 97 as they relate to Eco. To the extent paragraph 97 is directed to any other defendant, Eco lacks knowledge or information sufficient to form a belief about the truth of those allegations, and on that basis denies them.

98. Paragraph 98 is directed to Defendant Artisan, and no response by Eco is required. To the extent a response is required, Eco lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 98, and on that basis denies them. Eco denies that any product infringes any valid claim of the Asserted Patents.

99. Eco denies the allegations of paragraph 99 as they relate to Eco. To the extent paragraph 99 is directed to any other defendant, Eco lacks knowledge

or information sufficient to form a belief about the truth of those allegations, and on that basis denies them.

**RESPONSE TO DEMAND FOR JURY TRIAL AND PRAYER FOR RELIEF**

i4F's demand for a jury trial requires no response. Eco denies that i4F is entitled to any of the relief requested in the FAC, including the relief requested in paragraphs A through F of its prayer, or to any relief at all.

**AFFIRMATIVE AND OTHER DEFENSES**

Eco asserts the following defenses. By doing so, Eco does not assume any burden of proof or persuasion that it would not otherwise bear. Eco reserves the right to amend these defenses as discovery proceeds.

**FIRST DEFENSE**

**(Non-Infringement)**

100. Eco has not infringed and does not infringe, directly or indirectly, literally or under the doctrine of equivalents, any valid claim of the Asserted Patents, including claims 1 and 8 of the '918 Patent, claims 1–4 and 6–11 of the '396 Patent, and claims 1–5, 8–10, 14, 17–19, and 21–24 of the '753 Patent (the "Asserted Claims"), for the reasons stated in Counts I through III of Eco's Counterclaims, which are incorporated by reference.

101. Eco manufactures its products in China. Practicing a process outside the United States is not infringement under 35 U.S.C. § 271(a), which reaches only acts "within the United States." *See NTP, Inc. v. Research In Motion, Ltd.*, 418 F.3d 1282, 1318 (Fed. Cir. 2005) (a process is not used within the United States unless each step is performed here). Eco sells its products on FOB Shanghai terms, under which delivery occurs and risk of loss passes to the customer in China. Eco's sales therefore do not occur within the United States.

**SECOND DEFENSE**

**(Invalidity)**

102. The Asserted Claims are invalid for failure to satisfy the conditions of patentability of 35 U.S.C. §§ 102, 103, and 112, for the reasons stated in Counts IV through VI of Eco's Counterclaims, which are incorporated by reference.

**THIRD DEFENSE**

**(Lack of Standing — '918 Patent)**

103. On information and belief, the assignment of the '918 Patent to i4F was recorded with the United States Patent and Trademark Office on or about May 27, 2026, and is designated "nunc pro tunc," after i4F filed its original Complaint on May 8, 2026 (Dkt. 1). A patent plaintiff must hold legal title when it files suit, and a later nunc pro tunc assignment does not cure the defect. *Enzo APA & Son, Inc. v. Geapag A.G.*, 134 F.3d 1090, 1093 (Fed. Cir. 1998); *Paradise Creations, Inc. v. UV Sales, Inc.*, 315 F.3d 1304, 1309–10 (Fed. Cir. 2003). i4F therefore cannot maintain its claim for infringement of the '918 Patent.

**FOURTH DEFENSE**

**(Lack of Personal Jurisdiction)**

104. Eco is a Chinese company with no offices or employees in the United States. Eco sells its products on FOB Shanghai terms. Eco preserves its defense of lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2) and 12(h)(1).

**FIFTH DEFENSE**

**(Failure to State a Claim — Indirect and Willful Infringement)**

105. The FAC fails to state a claim against Eco for induced infringement or willful infringement. Fed. R. Civ. P. 12(b)(6), 12(h)(2). Inducement requires knowledge of the patent and knowledge that the induced acts infringe. *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011). Enhanced damages

are reserved for egregious, deliberate misconduct. *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 103–04 (2016). The FAC pleads these claims against the "Chinese Defendants" collectively and alleges no pre-suit knowledge by Eco except Eco's "prior relationship with i4F." FAC ¶ 46 (Dkt. 30 at 10). That relationship has never concerned the Asserted Patents, and the license the FAC identifies concerns i4F's locking systems. FAC ¶ 45 (Dkt. 30 at 10).

**SIXTH DEFENSE**

**(Limitation on Damages — 35 U.S.C. §§ 286, 287)**

106. i4F's recovery, if any, is limited by 35 U.S.C. §§ 286 and 287. To the extent i4F, its predecessors in interest, or its licensees made, sold, or offered for sale products covered by the Asserted Claims without marking them as required by 35 U.S.C. § 287(a), i4F may not recover damages for any period before Eco received actual notice of infringement. Once Eco identifies unmarked products, i4F bears the burden of proving compliance with § 287(a). *Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*, 876 F.3d 1350, 1368 (Fed. Cir. 2017). To the extent 35 U.S.C. § 287(a) applies, i4F may not recover damages for infringement of an Asserted Patent for any period before Eco received an affirmative communication of a specific charge of infringement of that patent by a specific accused product. *Amsted Indus. Inc. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 187 (Fed. Cir. 1994). i4F's letter of May 23, 2024 identified only the '396 Patent and only SPC panels with a Vilox locking system. It gave no notice of infringement of the '918 Patent, which it did not mention and which, on information and belief, i4F did not then own, or of the '753 Patent, which had not issued, and it gave no notice as to any product without a Vilox locking system.

**SEVENTH DEFENSE**

**(Prosecution History Estoppel and Disclaimer)**

107. i4F is barred by prosecution history estoppel and prosecution

disclaimer from construing the Asserted Claims to cover, literally or under the doctrine of equivalents, subject matter it surrendered during prosecution of the Asserted Patents and their related applications. A narrowing amendment made to satisfy any requirement of the Patent Act presumptively surrenders all equivalents of the amended limitation, *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 736–41 (2002), including when a dependent claim is rewritten in independent form and the original independent claim is cancelled, *Honeywell Int'l Inc. v. Hamilton Sundstrand Corp.*, 370 F.3d 1131, 1141–44 (Fed. Cir. 2004) (en banc). Arguments made to obtain allowance likewise limit the claims where they clearly and unmistakably disavow claim scope. *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1323–26 (Fed. Cir. 2003). The surrendered and disclaimed subject matter includes at least the following:

(a) '918 Patent. The examiner rejected application claim 17 of Application No. 16/718,522, which recited mixing, extrusion, optional lamination, annealing, and 15–75 wt.% filler, as anticipated by U.S. Patent Application Publication No. 2017/0120558 ("Pervan '558"). Non-Final Office Action at 2 (June 16, 2020). The applicant did not dispute the rejection. It cancelled claim 17 and rewrote application claims 19 and 20, on information and belief issued claims 1 and 8, in independent form. Amendment at 2–3, 6 (Oct. 15, 2020). i4F therefore cannot rely on equivalents to satisfy the requirement that the substrate be "attached to said top layer at a temperature higher than a softening point but lower than a melt temperature of a principal polymer comprised in said substrate" (claim 1), or that "at least a surface of said substrate is reheated before attaching said substrate to said top layer" (claim 8).

(b) ’396 Patent. The examiner rejected application claim 23 of Application No. 17/881,091, on information and belief issued claim 1, and the claims that issued as the remaining Asserted ’396 Claims, as obvious over U.S. Patent Application Publication No. 2015/0210055 (“Pervan ’055”). Non-Final Office Action at 3–4 (Dec. 6, 2022). The applicant did not dispute the rejection. It amended claim 23 to require that the “flooring face layer is textured,” adopting the limitation of dependent claim 29, which it cancelled as “redundant of amended claim 23.” Amendment at 2, 5 (May 5, 2023). Every Asserted ’396 Claim includes that limitation. i4F therefore cannot rely on equivalents to satisfy it, including by pointing to texture in a coating layer or in any layer other than the flooring face layer.

(c) ’753 Patent. In prosecuting Application No. 17/500,602, the applicant narrowed claim 1, on which every Asserted ’753 Claim depends, to overcome prior art. First, after the examiner stated that claim 1 did not exclude an adhesive layer, the applicant amended it to require that the flooring face layer be “fused without adhesives” onto the base layer, to overcome a rejection over CN 105275180 A (“She”) in view of U.S. Patent Application Publication No. 2009/0223162 (“Chen”). It had already argued that bonding by “a (well-known) PVC adhesive or hot-melt adhesive” is not fusion. Remarks at 7 (Oct. 9, 2024); Remarks at 6–7 (Jan. 20, 2025). Second, to overcome an anticipation rejection over U.S. Patent Application Publication No. 2011/0167744 (“Whispell”), the applicant amended claim 1 to require that the wearing face

sublayer be fused onto the decorative face sublayer, and the face layer onto the base layer, "by hot-melt overlaying." Remarks at 7–8 (May 9, 2025). The applicant then told the examiner that hot-melt overlaying requires heating a thermoplastic layer "until it reaches a molten or semi-molten state" so that polymer chains "interdiffuse into the adjacent substrate layer," and that it differs from "producing layers for a panel individually and then hot pressing them together using a hydraulic press," from "bonding via heat and pressure (i.e., hydraulic pressing or lamination)," and from a process using "elevated temperature, but not to the extent that the materials soften or melt at the interface," even one involving "some softening." Remarks at 8 (May 9, 2025); Remarks at 8 (Aug. 4, 2025). Third, the applicant argued that the claimed texture must be in the face layer rather than the coating, that a rough surface "is something else than having a texture," and that the textured surface must be "the top most surface of the panel." Remarks at 6 (Dec. 14, 2023); Remarks at 8 (Oct. 9, 2024). i4F is bound by these amendments and statements. It cannot contend that a face layer bonded with any adhesive, including a hot-melt adhesive, or joined by hot pressing or lamination without melting and interdiffusion at the interface, meets claim 1 literally or by equivalents, and it cannot rely on texture in a coating layer.

(d) Acquiescence and ensnarement. In each prosecution, the applicant did not contest the examiner's findings that the cited references, including Pervan '558 and Pervan '055, disclose the remaining claim limitations. i4F may not obtain a range of

equivalents that would encompass that prior art. *Wilson Sporting Goods Co. v. David Geoffrey & Assocs.*, 904 F.2d 677, 684 (Fed. Cir. 1990).

**EIGHTH DEFENSE**

**(No Injunctive Relief)**

108. i4F is not entitled to injunctive relief. i4F describes itself as a research and development company that licenses its technology to more than 150 manufacturers, FAC ¶ 13 (Dkt. 30 at 4), and any injury it claims is compensable by money damages. *See eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

**RESERVATION OF DEFENSES**

109. Eco reserves the right to assert additional defenses, including inequitable conduct, as discovery and further investigation warrant.

## COUNTERCLAIMS

Counterclaim-Plaintiff Zhejiang Eco New Material Co., Ltd. ("Eco") alleges as follows against Counterclaim-Defendant i4F Licensing N.V. ("i4F"). Eco asserts these counterclaims without waiving, and expressly subject to, its defense of lack of personal jurisdiction.

## THE PARTIES

1. Eco is a company organized under the laws of the People's Republic of China, with its principal place of business at No. 38 Zijin Road, Puyuan High-tech Park, Tongxiang City, Jiaxing, Zhejiang Province, China.

2. As alleged in the FAC, i4F is a Belgian company with its principal place of business at Industriedijk 19, 2300 Turnhout, Belgium. FAC ¶ 2 (Dkt. 30 at 2).

## JURISDICTION AND VENUE

3. These counterclaims arise under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202. The Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331, 1338(a), and 2201(a).

4. An actual, substantial, and continuing controversy exists between Eco and i4F concerning the infringement and validity of the Asserted Patents. i4F has sued Eco, alleging that Eco infringes claims 1 and 8 of the '918 Patent, claims 1–4 and 6–11 of the '396 Patent, and claims 1–5, 8–10, 14, 17–19, and 21–24 of the '753 Patent (together, the "Asserted Claims"). FAC ¶ 42 (Dkt. 30 at 10). Eco denies infringement and contends that the Asserted Claims are invalid.

5. i4F has submitted to the personal jurisdiction of this Court by filing this action here.

6. Venue for these counterclaims is proper in this District under 28 U.S.C. § 1391(b) and (c), and because i4F filed this action in this District.

## FACTUAL BACKGROUND

### A. Eco and Its Relationship with i4F

7. Eco was founded in 2017 and manufactures flooring products, including SPC flooring, at its facilities in Tongxiang City, Zhejiang Province, China.

8. Since 2018, Eco has been a licensee of i4F under a license agreement concerning i4F's locking technology for floor panels, including i4F's 3L TripleLock and Click4U locking systems. See FAC ¶ 45 (Dkt. 30 at 10).

9. Neither that license nor any other license Eco holds from i4F extends to the Asserted Patents.

10. The FAC defines the "Accused Products" as SPC floor panels or tiles "utilizing the Lox locking system, marketed and licensed by i4F's competitor Vilox AB." FAC ¶ 11 (Dkt. 30 at 3).

### B. i4F's Acquisition of the Asserted Patents

11. The '918 Patent, titled "Covering Panel and Process of Producing Covering Panels," issued on August 17, 2021, from U.S. Application No. 16/718,522, filed December 18, 2019, as a division of U.S. Application No. 15/543,393, the national stage of International Application No. PCT/EP2016/050733, filed January 15, 2016 (now U.S. Patent No. 10,753,102). '918 Patent, front page, item (62). The '918 Patent issued to Beaulieu International Group NV as both applicant and assignee. '918 Patent, front page, items (71), (73).

12. On information and belief, the assignment of the '918 Patent to i4F was recorded with the United States Patent and Trademark Office on or about May 27, 2026, and is designated "nunc pro tunc," after i4F filed its original Complaint in this action on May 8, 2026 (Dkt. 1).

13. The '396 and '753 Patents name John B. Troendle as the sole inventor. On information and belief, Sunrise SPC Technology LLC assigned that

patent family to i4F by an assignment recorded on or about April 26, 2024.

14. i4F describes itself as "a research and development company" whose technologies are licensed to "over 150 leading flooring manufacturers." FAC ¶ 13 (Dkt. 30 at 4).

**C. Subili Is Not Eco**

15. Eco and Subili are separate, unaffiliated companies. Neither owns any interest in the other; they share no officers, directors, employees, or facilities. Eco has never sold SPC flooring to Subili for the U.S. market.

16. Eco did not authorize Subili to identify Eco's address as a Subili "head office." *See* FAC ¶¶ 19–21 (Dkt. 30 at 5); Ex. C (Dkt. 30-3 at 1). On May 18, 2026, after learning of Subili's misuse, Eco sent Subili a written demand that it stop using Eco's name and information, and Eco sent a copy of that demand to i4F.

**D. The FAC** Relies on Subili's Listing

17. The FAC's allegations about how the "Accused Products" are made, and what they contain, rely principally on Exhibit D. FAC ¶¶ 31, 33, 35–37, 52–54, 64–72, 82–93 (Dkt. 30 at 7–17). Exhibit D is a Made-in-China.com listing posted by Subili. It identifies the supplier as "Changzhou Subili New Material Co., Ltd.," the model number as "SP 201XL," the trademark as "SUBILI," and the origin as "Changzhou, China," and three of the four certificates it displays are issued to Subili. Ex. D (Dkt. 30-4 at 1–2, 7).

18. The only Eco product material attached to the FAC is Exhibit E, a product page from Eco's website for model ECOW9001. Ex. E (Dkt. 30-5 at 1). Exhibit E shows a diagram labeling five layers of an SPC plank. It does not state the composition of the core, the temperatures or methods used to join the layers, whether any step involves annealing or reheating, how the UV coating is applied, or whether the surface texture corresponds to the printed design.

19. The FAC's allegations about Eco's formulations, and about the

temperatures and methods by which the layers are joined, are pleaded on information and belief, FAC ¶¶ 32, 34, 53–54, 65, 68–69, 83, 85 (Dkt. 30 at 8–9, 11, 13–14, 16), and they track the language of the Asserted Claims rather than any fact about Eco's products. Paragraph 32 recites the filler range of the Asserted '918 Claims and the ranges of claim 4 of the '396 Patent; paragraph 83 recites the ranges of claim 17 of the '753 Patent; and paragraph 65 alleges yet a different range, 20% to 30% PVC, for the same products. *Compare* FAC ¶ 32 (Dkt. 30 at 8–9), *with id.* ¶ 65 (Dkt. 30 at 13), *and id.* ¶ 83 (Dkt. 30 at 16).

**E. Rigid-Core Vinyl Flooring Was Well Known**

20. Resilient vinyl flooring made from PVC and calcium carbonate (limestone) filler has been sold in the United States for decades, including vinyl composition tile containing a majority of filler by weight. Since 1987, ASTM International has published a standard specification for vinyl composition floor tile, which describes the tile as a binder of poly(vinyl chloride) or vinyl chloride copolymer resins combined with fillers and pigments. ASTM F1066, *Standard Specification for Vinyl Composition Floor Tile* (originally approved 1987). By 1986, U.S. Patent No. 4,574,065, issued to Armstrong World Industries, Inc., disclosed a floor tile containing 13.6% by weight of polyvinyl chloride and polyvinyl chloride–polyvinyl acetate resin, 71.6% by weight of ground limestone, and 8.0% by weight of colored marble. U.S. Patent No. 4,574,065 (filed July 27, 1984; issued Mar. 4, 1986). Vinyl composition tile is still sold in the United States, for example under Armstrong Flooring's Excelon brands. It is described as "limestone-based flooring tiles with a PVC binder," made by hot-mixing the raw materials and calendering them into a hot sheet, with 80–85% limestone flour and 5–10% PVC binder by weight. Armstrong Flooring, *Environmental Product Declaration: Vinyl Composition Tile (VCT)* §§ 2.2, 2.7, 2.8 (ASTM Int'l Decl. No. EPD-0004, issued June 20, 2020).

21. Luxury vinyl tile and plank constructed with a printed PVC

decorative film, a transparent PVC wear layer, and a UV-cured top coating, joined by heat and pressure, was widely sold before 2015. A patent application claiming priority to January 24, 2014 describes conventional LVT floors as "a layered product made of thermoplastic PVC," with "a 0.1 mm high quality printed decorative PVC foil" on the core, "[a] transparent wear layer of vinyl" on the decorative foil, and "[a] transparent UV curing PU (polyurethane) lacquer" as a protective layer, all "fused or laminated together with heat and pressure." It adds that LVT floors "have often an embossed structure." U.S. Patent Application Publication No. 2015/0210055 ("Pervan '055"), Background (filed Jan. 22, 2015; published July 30, 2015). ASTM International's standard for solid vinyl floor tile classifies such "printed film vinyl tile" as Class III. ASTM F1700, *Standard Specification for Solid Vinyl Floor Tile* (2004 ed., reapproved 2010). The U.S. trade press reported LVT sales of an estimated $949 million in 2013, up from $733 million in 2012, and that one leading supplier made "nearly all" of its products "via the hot-press methodology." Jenna Lippin, *Resilient: State of the Industry—LVT Maintains Growth Curve as Sheet Slides*, Floor Covering News (Aug. 4/11, 2014).

22. Rigid-core SPC flooring, which pairs those surface layers with an extruded core of PVC and calcium carbonate and with locking edge profiles, was described in publications and sold commercially before the effective filing dates of the Asserted Claims. As the examiner found in prosecuting the '753 Patent, U.S. Patent Application Publication No. 2011/0167744 ("Whispell"), published July 14, 2011, discloses a floor covering with a base layer of about 15–30 wt.% PVC and about 50–80 wt.% filler, a printed decorative layer, a wear layer, a UV-curable coating, an embossed surface, and interlocking edges. Whispell ¶¶ [0066]–[0070], [0077], [0234], [0301]. Pervan '055, published July 30, 2015, describes a floor panel whose core is "made primarily of PVC mixed with 20-80% chalk or limestone fillers" and formed by calendering or extrusion. The

panel has a printed decorative PVC foil and a transparent PVC wear layer "fused together in one or several steps with heat and pressure," a polyurethane coating, and a mechanical locking system with a tongue and tongue groove. Chinese Patent Application Publication No. CN 105275180 A ("She"), published January 27, 2016, describes a stone-plastic floor with a core of PVC and calcium carbonate, decorative and wear-resistant layers, and a UV-curable paint layer. By early 2018, rigid-core SPC flooring was sold in the United States by numerous suppliers, including Armstrong Flooring, Mannington, Mohawk, Shaw Industries, and Tarkett. The trade press described it as having "a composite core construction" with "a higher filler content and higher density" than conventional LVT, and reported that it had "burst onto the scene less than two years ago." Ken Ryan, *Rigid Core Continues to Set New Standards*, Floor Covering News (Apr. 2/9, 2018). Eco's own SPC flooring was on sale by late 2018. *See* ¶ 23, below.

23. Eco began selling SPC flooring no later than November 23, 2018, before February 27, 2019, June 5, 2019, May 25, 2020, and October 13, 2021. As alleged below, some or all of the Asserted '396 and '753 Claims are entitled to no date earlier than one of those dates, *see* ¶¶ 24–27, below, and as to those claims Eco's earlier SPC products are prior art under 35 U.S.C. § 102(a)(1). Eco denies that any of its SPC products practices any Asserted Claim. In the alternative, if any of those '396 or '753 Claims is construed to cover Eco's current SPC products, Eco's earlier products, which on information and belief had the same layered construction and were made by substantially the same process, anticipate it or render it obvious. *See Peters v. Active Mfg. Co.*, 129 U.S. 530, 537 (1889).

### F. Two Asserted Patents Reach 2016 Only Through Later Continuation-in-Part Applications

24. The '396 Patent issued on October 24, 2023, from U.S. Application No. 17/881,091, filed August 4, 2022. It is a division of U.S. Application No.

17/146,087, filed January 11, 2021 (now U.S. Patent No. 11,440,232), which is a continuation of U.S. Application No. 16/432,106, filed June 5, 2019 (now U.S. Patent No. 10,889,040), which is a continuation-in-part of U.S. Application No. 15/194,891, filed June 28, 2016 (now U.S. Patent No. 10,343,381). ’396 Patent, front page; *id.* col. 1, ll. 7–17. Any Asserted ’396 Claim that depends on matter first added in the June 5, 2019 continuation-in-part application is entitled to no date earlier than June 5, 2019. *See* ¶¶ 26–27, below.

25. The ’753 Patent issued on September 30, 2025, from U.S. Application No. 17/500,602, filed October 13, 2021. The ’753 Patent claims priority through a chain of continuation-in-part applications, U.S. Application No. 16/882,699, filed May 25, 2020, and U.S. Application No. 16/287,840, filed February 27, 2019, to U.S. Application No. 15/194,843, filed June 28, 2016. Those three applications issued as U.S. Patent Nos. 11,248,380, 10,662,656, and 10,220,599, respectively. ’753 Patent, front page, item (63); *id.* col. 1 (Cross-Reference to Related Applications). During prosecution, the applicant added to claim 1 the requirements that the face layer be “fused without adhesives” and fused “by hot-melt overlaying,” and cited as support only paragraphs [0016] and [0041] of the application filed October 13, 2021. Remarks at 6 (Jan. 20, 2025); Remarks at 7 (May 9, 2025), Appl. No. 17/500,602.

26. A continuation-in-part adds new matter. A claim in a patent issuing from a continuation-in-part receives an earlier application’s filing date only if that earlier application describes the claimed invention, and the patentee bears the burden of coming forward with evidence of that entitlement. *Lockwood v. Am. Airlines, Inc.*, 107 F.3d 1565, 1571–72 (Fed. Cir. 1997); *PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1305–06 (Fed. Cir. 2008).

27. On information and belief, the 2016 parent applications do not describe several limitations of the Asserted ’396 and ’753 Claims, including the compositional ranges recited in claim 4 of the ’396 Patent (20%–35% PVC and

63%–73% calcium carbonate) and claim 17 of the '753 Patent (18.13%–64.71% PVC and 32.35%–72.53% calcium carbonate). A claim that depends on such matter is entitled to no date earlier than the filing date of the application that first disclosed it: for the '396 Patent, June 5, 2019; for the '753 Patent, February 27, 2019, May 25, 2020, or October 13, 2021.

**COUNT I**

**(Declaratory Judgment of Non-Infringement of the '918 Patent)**

28. Eco incorporates by reference paragraphs 1 through 27 of these Counterclaims as if fully set forth herein.

29. Eco has not infringed and does not infringe, directly or indirectly, literally or under the doctrine of equivalents, any claim of the '918 Patent, including claims 1 and 8.

30. Claims 1 and 8 are process claims. On information and belief, they issued from application claims 19 and 20 of Application No. 16/718,522. Each requires mixing a synthetic material and a filler material to obtain a mixture, with the filler in an amount from 15 to 75 wt.% of the mixture; extruding the mixture to obtain a substrate; and "annealing the covering panel." Claim 1 further requires that "said substrate is attached to said top layer at a temperature higher than a softening point but lower than a melt temperature of a principal polymer comprised in said substrate." Claim 8 instead requires that "at least a surface of said substrate is reheated before attaching said substrate to said top layer." '918 Patent, col. 27, l. 53–col. 28, l. 36.

31. Eco's manufacturing process does not perform at least the following claimed steps: "annealing the covering panel" (claims 1 and 8), and, for claim 8, reheating "at least a surface of said substrate … before attaching said substrate to said top layer." The specification describes annealing as a heat treatment "to remove stress and achieve dimensional stability" that "can occur in an oven or other heating device" at "a temperature above the glass transition temperature,"

and distinguishes it from a later step in which "the panel can be aged at ambient conditions, such as about 25° C." '918 Patent, col. 23, ll. 36–57. Eco's process includes no such heat treatment. Eco holds its panels at room temperature for about 24 to 48 hours before UV coating, which is the aging step the specification distinguishes from annealing. Nor does Eco reheat the substrate before attaching the top layer. The attachment-temperature limitation of claim 1 and the reheating limitation of claim 8 are the only features the applicant added to obtain allowance over U.S. Patent Application Publication No. 2017/0120558 ("Pervan '558"). Amendment at 2–3, 6 (Oct. 15, 2020), Appl. No. 16/718,522. i4F therefore must prove that Eco performs those steps literally and cannot rely on the doctrine of equivalents.

32. Eco performs its manufacturing process entirely in China. Practicing a process abroad is not infringement under 35 U.S.C. § 271(a). Eco's products are not made by a process patented in the '918 Patent, *see* ¶ 31, above, and so are not subject to 35 U.S.C. § 271(g). Eco sells its products on FOB Shanghai terms, under which delivery occurs and risk of loss passes to the customer from U.S. in China.

33. Eco has not induced or contributed to infringement of the '918 Patent. Eco did not know of the '918 Patent before this action and has not intended to cause, or knowingly encouraged, any act of infringement by others.

34. Eco is entitled to a declaratory judgment that it has not infringed and does not infringe any claim of the '918 Patent.

**COUNT II**

**(Declaratory Judgment of Non-Infringement of the '396 Patent)**

35. Eco incorporates by reference paragraphs 1 through 27 of these Counterclaims as if fully set forth herein.

36. Eco has not infringed and does not infringe, directly or indirectly, literally or under the doctrine of equivalents, any claim of the '396 Patent,

including claims 1–4 and 6–11.

37. Eco makes its SPC products in China and sells them on FOB Shanghai terms, under which delivery occurs and risk of loss passes to the customer in China. Eco's sales therefore do not occur within the United States.

38. To the extent the proportions of PVC and calcium carbonate in any Eco SPC core fall outside 20%–35% polyvinylchloride and 63%–73% calcium carbonate by weight, that product does not meet claim 4. Claim 1 of the '396 Patent, on which every Asserted '396 Claim depends, was allowed only after the applicant amended it to require that the "flooring face layer is textured," to overcome the examiner's rejection over Pervan '055. Amendment at 2, 5 (May 5, 2023), Appl. No. 17/881,091. i4F therefore cannot rely on the doctrine of equivalents to satisfy that limitation. In addition, in prosecuting the '753 Patent, which names the same inventor, the applicant, represented by i4F's counsel in this action, told the USPTO that "hot-melt overlaying" requires heating a thermoplastic layer to "a molten or semi-molten state" so that polymer chains interdiffuse across the interface, and that it does not include "bonding via heat and pressure (i.e., hydraulic pressing or lamination)." See ¶ 43, below. On information and belief, the same term carries the same meaning in the '396 Patent. *See Microsoft Corp. v. Multi-Tech Sys., Inc.*, 357 F.3d 1340, 1350 (Fed. Cir. 2004). Eco joins the face layer to its SPC cores by lamination under heat and pressure, which, as the applicant told the USPTO, is not hot-melt overlaying. Eco's SPC products therefore do not meet the "hot-melt overlaying" limitation of claim 1 of the '396 Patent, on which every Asserted '396 Claim depends.

39. Eco has not induced or contributed to infringement of the '396 Patent and has not intended to cause, or knowingly encouraged, any act of infringement by others.

40. Eco is entitled to a declaratory judgment that it has not infringed and does not infringe any claim of the '396 Patent.

**COUNT III**

**(Declaratory Judgment of Non-Infringement of the '753 Patent)**

41. Eco incorporates by reference paragraphs 1 through 27 of these Counterclaims as if fully set forth herein.

42. Eco has not infringed and does not infringe, directly or indirectly, literally or under the doctrine of equivalents, any claim of the '753 Patent, including claims 1–5, 8–10, 14, 17–19, and 21–24.

43. Eco's SPC products lack at least the following limitations of the Asserted '753 Claims: the requirement that the flooring face layer's textured surface "define[] a textured top surface" of the panel (claim 1). Eco's embossed wear layer is covered by the UV-cured coating and is not "the top most surface of the panel," which the applicant told the USPTO the claimed textured surface must be. To the extent the proportions of PVC and calcium carbonate in any Eco SPC core fall outside 18.13%–64.71% PVC and 32.35%–72.53% calcium carbonate by weight, that product does not meet claim 17. Eco's UV coating is applied as a liquid and cured in place and does not comprise a film material (claim 19), see FAC ¶ 92 (Dkt. 30 at 17); the texture does not at least partially complement the printed pattern (claim 18). Eco also joins the face layer to its SPC cores by lamination under heat and pressure, which, as the applicant told the USPTO, is not hot-melt overlaying (claim 1). Claim 1 of the '753 Patent, on which every Asserted '753 Claim depends, requires that the wearing face sublayer be "fused onto the decorative face sublayer by hot-melt overlaying," that the flooring face layer be "fused without adhesives onto a top face of said flooring base layer by hot-melt overlaying," and that the flooring face layer have "a decoratively textured surface" that "defines a textured top surface of said flooring segment." The applicant added each of those limitations by amendment to overcome prior-art rejections over She, U.S. Patent Application Publication No. 2009/0223162 ("Chen"), and Whispell. It told the examiner that hot-melt

overlaying requires heating a layer to "a molten or semi-molten state" so that polymer chains "interdiffuse into the adjacent substrate layer," and that the claims are not met by "bonding via heat and pressure (i.e., hydraulic pressing or lamination)," by a process that uses "elevated temperature, but not to the extent that the materials soften or melt at the interface," or by bonding with "a (well-known) PVC adhesive or hot-melt adhesive." Remarks at 7 (Oct. 9, 2024); Remarks at 8 (May 9, 2025); Remarks at 8 (Aug. 4, 2025), Appl. No. 17/500,602. i4F is bound by those statements and cannot recapture the surrendered scope through the doctrine of equivalents.

44. Eco makes its SPC products in China and sells them on FOB Shanghai terms, under which delivery occurs and risk of loss passes to the customer in China. Eco's sales therefore do not occur within the United States.

45. Eco has not induced or contributed to infringement of the '753 Patent. Eco did not know of the '753 Patent before this action and has not intended to cause, or knowingly encouraged, any act of infringement by others.

46. Eco is entitled to a declaratory judgment that it has not infringed and does not infringe any claim of the '753 Patent.

**COUNT IV**

**(Declaratory Judgment of Invalidity of the '918 Patent)**

47. Eco incorporates by reference paragraphs 1 through 27 of these Counterclaims as if fully set forth herein.

48. Claims 1 and 8 of the '918 Patent are invalid for failure to satisfy the conditions of patentability of 35 U.S.C. §§ 102, 103, and 112.

49. The Asserted '918 Claims are entitled to an effective filing date no earlier than January 15, 2016, the filing date of International Application No. PCT/EP2016/050733.

50. Claims 1 and 8 are anticipated or would have been obvious in view of prior art that includes at least the following, alone or in combination with each

other and with the general knowledge of a person of ordinary skill in the art:

(a) Pervan ’558, which the examiner found discloses every step of application claim 17 (mixing a synthetic material with 15 to 75 wt.% filler, extruding the mixture, laminating the substrate to a top layer, and annealing), as well as the process of application claim 21, which includes every limitation of application claim 20. Non-Final Office Action at 2–3 (June 16, 2020), Appl. No. 16/718,522. Pervan ’558 is a division of U.S. Application No. 14/672,610, filed March 30, 2015, and claims priority to Swedish Patent Application No. 1450382-5, filed March 31, 2014.

(b) Pervan ’055, which is not among the references cited on the face of the ’918 Patent.

(c) Other prior art, including products and processes publicly used or on sale before the effective filing date, to be identified in Eco’s invalidity contentions.

51. Pervan ’558 discloses every step of claims 1 and 8 except, at most, the attachment-temperature limitation of claim 1 and the reheating limitation of claim 8, and neither limitation adds anything inventive. Claims 1 and 8 therefore would have been obvious under 35 U.S.C. § 103 over Pervan ’558 alone or in view of Pervan ’055 and the general knowledge of a person of ordinary skill in the art. On information and belief, Pervan ’558 anticipates claim 8 under 35 U.S.C. § 102.

52. Claims 1 and 8 are also indefinite under 35 U.S.C. § 112(b). Claim 1 requires attaching the substrate at a temperature above the “softening point” and below the “melt temperature” of the “principal polymer.” PVC, the principal polymer in SPC, is largely amorphous and has no single melting temperature, and its softening point varies with the test method and formulation. The

specification defines the softening point only as “the temperature at which a material softens beyond some arbitrary softness,” which “can be determined, for example, by the Vicat method (ASTM-D1525 or ISO 306),” ’918 Patent, col. 24, ll. 37–40, and it neither defines “melt temperature” nor says how it is to be measured, and different methods yield materially different values. A claim term that admits multiple measurement methods yielding different results, without guidance on which to use, fails to inform skilled artisans of the claim’s scope with reasonable certainty. *Dow Chem. Co. v. Nova Chems. Corp. (Can.)*, 803 F.3d 620, 633–35 (Fed. Cir. 2015); *see Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014).

53. Eco is entitled to a declaratory judgment that claims 1 and 8 of the ’918 Patent are invalid.

**COUNT V**

**(Declaratory Judgment of Invalidity of the ’396 Patent)**

54. Eco incorporates by reference paragraphs 1 through 27 of these Counterclaims as if fully set forth herein.

55. Claims 1–4 and 6–11 of the ’396 Patent are invalid for failure to satisfy the conditions of patentability of 35 U.S.C. §§ 102, 103, and 112.

56. The Asserted ’396 Claims are entitled to an effective filing date no earlier than June 28, 2016, and, for each claim that depends on matter first added in the June 5, 2019 continuation-in-part application, no earlier than June 5, 2019. Any SPC floor panel on sale or in public use anywhere before the applicable date, including Eco’s own earlier SPC products, *see* ¶ 23, above, is prior art under 35 U.S.C. § 102(a)(1).

57. The Asserted ’396 Claims are anticipated or would have been obvious in view of prior art that includes at least the following, alone or in combination with each other and with the general knowledge of a person of ordinary skill in the art:

(a) Pervan ’055 (published July 30, 2015), which the examiner found discloses every limitation of the claims that issued as the Asserted ’396 Claims except that the flooring face layer is “textured,” findings the applicant did not dispute. Non-Final Office Action at 3–4 (Dec. 6, 2022), Appl. No. 17/881,091.

(b) Whispell, Chen (published September 10, 2009), and European Patent Application Publication No. EP 2905376 A1 (“Clement”) (published August 12, 2015), each of which discloses a textured or embossed decorative face for flooring. None of them is among the references cited on the face of the ’396 Patent, which lists only Pervan ’055; the ’396 specification mentions Chen only in its background. ’396 Patent, front page; *id.* col. 2.

(c) Whispell, which discloses a base layer of about 15–30 wt.% PVC and about 50–80 wt.% filler, Whispell ¶ [0234], and Pervan ’055, which discloses PVC mixed with 20–80% chalk or limestone fillers.

(d) Eco’s own SPC flooring sold on November 23, 2018, before June 5, 2019, if the Asserted ’396 Claims are construed to cover Eco’s current SPC products. *See* ¶ 23, above.

58. The Asserted ’396 Claims would have been obvious under 35 U.S.C. § 103 over Pervan ’055 in view of any of Whispell, Chen, or Clement and the general knowledge of a person of ordinary skill in the art, who would have been motivated to texture the face of Pervan ’055’s panel for appearance and slip resistance and would have had a reasonable expectation of success. Claim 4 would also have been obvious, because the ranges disclosed in Pervan ’055 and Whispell overlap the claimed ranges. *In re Peterson*, 315 F.3d 1325, 1329 (Fed. Cir. 2003); *E.I. du Pont de Nemours & Co. v. Synvina C.V.*, 904 F.3d 996, 1006

(Fed. Cir. 2018).

59. The Asserted ’396 Claims are also indefinite under 35 U.S.C. § 112(b). The ’396 specification describes “hot-melt overlaying” only as bringing the layers into contact and “simultaneously heating and applying compression to the stack.” ’396 Patent, col. 8, ll. 7–30. In prosecuting the related ’753 Patent, however, the applicant, represented by i4F’s counsel in this action, told the USPTO that hot-melt overlaying requires a molten or semi-molten state and interdiffusion of polymer chains at the interface, and does not include bonding via heat and pressure. *See* ¶ 43, above. A claim term that the patentee has described in materially inconsistent ways does not inform a person of ordinary skill of the claim’s scope with reasonable certainty. *Nautilus*, 572 U.S. at 901; *see Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 789 F.3d 1335, 1344–45 (Fed. Cir. 2015).

60. Eco is entitled to a declaratory judgment that claims 1–4 and 6–11 of the ’396 Patent are invalid.

**COUNT VI**

**(Declaratory Judgment of Invalidity of the ’753 Patent)**

61. Eco incorporates by reference paragraphs 1 through 27 of these Counterclaims as if fully set forth herein.

62. Claims 1–5, 8–10, 14, 17–19, and 21–24 of the ’753 Patent are invalid for failure to satisfy the conditions of patentability of 35 U.S.C. §§ 102, 103, and 112.

63. The Asserted ’753 Claims are entitled to an effective filing date no earlier than June 28, 2016. Each claim that depends on matter first added in a later continuation-in-part application is entitled to no date earlier than the filing date of that application: February 27, 2019, May 25, 2020, or October 13, 2021. During prosecution, the applicant added to claim 1 the requirements that the face layer be “fused without adhesives” and fused “by hot-melt overlaying,” and cited

as support only paragraphs [0016] and [0041] of the application filed October 13, 2021. Remarks at 6 (Jan. 20, 2025); Remarks at 7 (May 9, 2025), Appl. No. 17/500,602.

64. The Asserted ’753 Claims are anticipated or would have been obvious in view of prior art that includes at least the following, alone or in combination with each other and with the general knowledge of a person of ordinary skill in the art:

(a) Whispell, over which the examiner rejected claim 1 and most of the asserted dependent claims in the last Office Action before allowance. Final Office Action (July 3, 2025), Appl. No. 17/500,602. The examiner gave the process limitation "by hot-melt overlaying" no patentable weight, and the applicant overcame the rejection with attorney argument and no evidence.

(b) Pervan ’055, which is listed among the references cited on the face of the ’753 Patent but, on information and belief, was never applied in any rejection.

(c) Chen, Clement, and She.

(d) Eco’s own SPC flooring sold before February 27, 2019, May 25, 2020, or October 13, 2021, if the Asserted ’753 Claims are construed to cover Eco’s current SPC products. *See* ¶ 23, above.

65. On information and belief, Whispell anticipates the Asserted ’753 Claims under 35 U.S.C. § 102(a)(1). The process limitation "by hot-melt overlaying" cannot distinguish Whispell unless it imparts a structural difference to the product, and the applicant never showed one. *Amgen Inc. v. F. Hoffmann-La Roche Ltd.*, 580 F.3d 1340, 1369–70 (Fed. Cir. 2009); *Greenliant Sys., Inc. v. Xicor LLC*, 692 F.3d 1261, 1268 (Fed. Cir. 2012). In the alternative, the

Asserted ’753 Claims would have been obvious under 35 U.S.C. § 103 over Whispell in view of Pervan ’055, Chen, Clement, and/or She, and the general knowledge of a person of ordinary skill in the art.

66. Claim 18 is indefinite under 35 U.S.C. § 112(b). It requires that the “decoratively textured surface is at least partially complementing said pattern or image of said decorative face.” “At least partially complementing” is a term of degree for which, on information and belief, the specification provides no objective standard, and “said decorative face” has no antecedent basis in claim 1, which recites a “decorative face sublayer.” Claim 1, and therefore every Asserted ’753 Claim, is also indefinite. It requires that the face layer’s textured surface “defines a textured top surface” of the panel while also requiring a coating layer “applied on top of said flooring face layer.” And the applicant defined “hot-melt overlaying” by reference to molecular interdiffusion and chain entanglement at the interface, a standard that, on information and belief, the specification does not disclose and that a person of ordinary skill could not determine with reasonable certainty from the finished product.

67. Eco is entitled to a declaratory judgment that claims 1–5, 8–10, 14, 17–19, and 21–24 of the ’753 Patent are invalid.

## PRAYER FOR RELIEF

Eco respectfully requests that the Court enter judgment in its favor and against i4F as follows:

A. dismissing i4F’s FAC with prejudice and ordering that i4F take nothing by it;

B. declaring that Eco has not infringed and does not infringe, directly or indirectly, literally or under the doctrine of equivalents, any claim of the ’918, ’396, or ’753 Patents;

C. declaring that claims 1 and 8 of the ’918 Patent, claims 1–4 and 6–11 of the ’396 Patent, and claims 1–5, 8–10, 14, 17–19,

and 21–24 of the ’753 Patent are invalid;

D. denying i4F’s requests for damages, enhanced damages, injunctive relief, and attorneys’ fees;

E. declaring this case exceptional under 35 U.S.C. § 285 and awarding Eco its reasonable attorneys’ fees;

F. awarding Eco its costs; and

G. granting Eco such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Under Federal Rule of Civil Procedure 38(b) and Local Rule 38-1, Eco demands a trial by jury on all issues so triable, including all issues raised by the FAC, Eco’s Answer and defenses, and Eco’s Counterclaims.

Dated: October 29, 2026

MY IP & TRUST LAW, PLLC

By: /s/ Li Liu
Li Liu
*Attorney for Defendant and Counterclaim-Plaintiff*
Zhejiang Eco New Material Co., Ltd.